# DUNBAR *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF OREGON.

No. 693.   Argued December 5, 6, 1894. -- Decided January 28, 1895.

In an indictment for smuggling opium a description of the property smuggled as "prepared opium, subject to duty by law, to wit, the duty of twelve dollars per pound," is a sufficient description of the property subjected to duty by paragraph 48 of § 1 of the tariff act of October 1, 1890, c. 1244, 26 Stat. 567.

It is no valid objection to an indictment that the description of the property in respect to which the offence is charged to have been committed is broad enough to include more than one specific article; and any words of description which make clear to the common understanding that in respect to which the offence is alleged to have been committed are sufficient.

A defendant who waits till after verdict before making objection to the sufficiency of the indictment waives all objections which run to the mere form in which the various elements of the crime are stated, or to the fact that the indictment is inartificially drawn.

One good count in an indictment containing several, is sufficient to sustain a judgment.

*United States* v. *Carll,* 105 U. S. 611, distinguished from this case.

A charge that the defendant wilfully, unlawfully, and knowingly, and with intent to defraud the revenues of the United States smuggled and clandestinely introduced into the United States prepared opium carries with it a direct averment that he knew that the duties were not fully paid, and that he was seeking to bring such goods into the United States without their just contribution to the revenues, and is therefore not subject to the objection that a *scienter* is not alleged.

An objection to the admissibility of testimony as to a count upon which the accused is acquitted is immaterial.

Secondary evidence is admissible to show the contents of letters in the possession of the defendant in a criminal proceeding, when he refuses to produce them on notice to do so, and cannot be compelled to produce them.

When a competent witness testifies that a writing which he produces was received by him and that a defendant on trial in a criminal proceeding admitted that he sent it to him, a foundation is laid for the introduction of the writing against the defendant, although not in his handwriting.

An instruction objected to as misrepresenting the testimony and as attempting to enforce as a conclusion from the misrepresented testimony that which was only a possible inference therefrom, is examined and held to fairly leave the question of fact to the jury, and not to overstate the inference from it, if found against the defendant.

An instruction to the jury that "a reasonable doubt is not an unreasonable doubt, that is to say, by a reasonable doubt you are not to understand that all doubt is to be excluded; you are required to decide the question submitted to you upon the strong probabilities of the case, and the probabilities must be so strong as not to exclude all doubt or possibility of error, but as to exclude reasonable doubt," gives all the definition of reasonable doubt which a court can be required to give.

ON July 14, 1893, there was returned into the District Court of the United States for the District of Oregon an indictment against the defendant, William Dunbar, now plaintiff in error, charging him in five counts, under § 2865, Rev. Stat., with the crime of smuggling. On November 25, 1893, there was also filed in the same court a second indictment charging him in nine counts with a violation of § 3082, Rev. Stat.

Section 2865 provides: "If any person shall knowingly and wilfully, with intent to defraud the revenue of the United States, smuggle, or clandestinely introduce, into the United States, any goods, wares, or merchandise, subject to duty by law, and which should have been invoiced, without paying or accounting for the duty, . . . every such person . . . shall be deemed guilty," etc. The charge in the third count of the first indictment was, "that on the 2d day of September, 1892, in the State of Oregon and in the District of Oregon and within the jurisdiction of this court, the said William Dunbar did, on the steamship Haytian Republic, a steamship plying between the port of Portland, Oregon, in the United States, and Vancouver, in the province of British Columbia,

Dominion of Canada, wilfully, unlawfully, and knowingly and with intent to defraud the revenues of the United States smuggle and clandestinely introduce into the United States, to wit, into. the State of Oregon, and within the jurisdiction of this court, and from a foreign country, to wit, the province of British Columbia, in the Dominion of Canada, certain goods, wares, and merchandise, to wit, a large quantity of prepared opium, being about 1400 pounds of prepared opium, the exact number of pounds being to the grand jury unknown, of the value of $15,400, subject to duty by law, to wit, a duty of twelve dollars ($12) per pound, and which should have been invoiced, without paying or accounting for said duty or any part thereof and without having said opium or any part thereof invoiced, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the United States of America." The fourth count was different only in the time and the amount of opium charged to have been smuggled.

Section 3082 is as follows: "If any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any merchandise, contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported contrary to law, such merchandise shall be forfeited and the offender shall be fined," etc. The substance of the second, fourth, and fifth counts of the second indictment was that the defendant did "wilfully, unlawfully, and knowingly and with intent to defraud the revenues of the United States smuggle and clandestinely introduce into the United States" certain amounts of prepared opium. The ninth count charged that "on the 5th day of February, 1893, said William Dunbar, in the District of Oregon and within the jurisdiction of this court, did wilfully, unlawfully, fraudulently, and knowingly and with intent to defraud the revenues of the United States facilitate the transportation after importation of a large quantity of prepared opium to wit, about 200 pounds of prepared opium, the exact number of pounds being to the grand jury unknown, which pre-

pared opium was subject to·a duty by law, to wit, to a duty of twelve dollars ($12) per pound, and which should have been invoiced, and which prepared opium on said 5th day of February, 1893, had been knowingly, wilfully, unlawfully, and ·fraudulently brought, imported, smuggled, and clandestinely introduced into the United States and into the· District of Oregon and within the jurisdiction of this court, from a foreign country, to wit, from the province of British Columbia, Dominion of Canada, and upon which prepared opium no duty had been paid or accounted for according to law, and none of said prepared opium had been invoiced, he, the said William Dunbar, then and there well knowing that no duty had been paid or accounted for according to law on said prepared opium, and that none of said prepared .opium had been invoiced, and that the same and the whole thereof had been unlawfully, wilfully, knowingly, and fraudulently brought, imported, smuggled, and clandestinely introduced into the United States and into the District of Oregon from said foreign country, said province of British Columbia, in said Dominion of Canada as aforesaid; that the said William Dunbar did then and there facilitate the transportation of said opium, after importation, by packing the same in trunks and causing the same to be transported as baggage from Portland, Oregon, to San Francisco, California, contrary to the —— of statute in such cases made and provided and against the peace and dignity of the United States."

· On November 27, 1893, the court made an order consolidating the two cases for trial. Upon the trial of the consolidated cases the jury returned a verdict of guilty, as charged in the six counts above referred to of the two indictments. A .motion for a new trial having been overruled, judgment was entered sentencing the defendant to pay a fine of $1000, and to be imprisoned for a term of two years. To reverse such judgment and sentence the defendant sued out this writ of error.

*Mr. John H. Mitchell* for plaintiff in error.

*Mr. Assistant Attorney General Conrad* for defendants in error.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

The first question presented for our consideration is as to the sufficiency of these counts in the indictment. The description of the property charged to have been smuggled is " prepared opium . . . subject to duty by law, to wit, the duty of twelve dollars per pound."

The revenue act of October 1, 1890, c. 1244, 26 Stat. 567, commonly known as the "McKinley act," was in force at the time of the commission of these alleged offences, and the only clauses in it in terms prescribing a duty on opium imported from foreign countries are paragraphs 47 and 48 of section 1, which read:

"47. Opium, aqueous extract of, for medicinal uses, and tincture of, as laudanum, and all other liquid preparations of opium, not specially provided for in this act, forty per centum ad valorem.

"48. Opium containing less than nine per centum of morphia, and opium prepared for smoking, twelve dollars per pound; but opium prepared for smoking and other preparations of opium deposited in bonded warehouse shall not be removed therefrom without payment of duties, and such duties shall not be refunded."

The contention is that opium is dutiable only in certain specified forms and conditions, as follows: aqueous extract of opium for medicinal uses; tincture of opium, as laudanum; all other liquid preparations of opium not specially provided for in the act; opium containing less than nine per centum of morphia; and opium prepared for smoking; that there is nothing known to the revenue law simply as "prepared opium," and, therefore, that a charge of bringing in prepared opium" without any payment of duty states nothing which the law prohibits. It is true that the language of paragraph 48 is "opium prepared for smoking," while the indictment reads "prepared opium," and thus does not limit the description by stating the purpose for which the opium charged to have been smuggled was prepared. Opium may,

it is said, be prepared for many uses; the statute only imposes a duty on "opium prepared for smoking;" hence the indictment is not precise, as it must be, because the terms of description are broad enough to include opium prepared for purposes other than smoking, and not subject to any duty.

But although these are purely statutory offences, it is unnecessary to resort to the very words of the statute. The pleader is at liberty to use any form of expression, provided only that he thereby fully and accurately describes the offence; and the entire indictment is to be considered in determining whether the offence is fully stated. The argument made by counsel omits to notice other words, which clearly limit any generality in the term " prepared opium," and so limit it as to bring the article charged to have been smuggled within the bounds of the statute. The description is not merely of " prepared opium," but of such opium "subject to duty by law, to wit, the duty of twelve dollars per pound." In other words, the defendant is charged to have smuggled that kind of prepared opium which is subject by law to a duty of twelve dollars a pound. Turning to paragraph 48 we find that " opium prepared for smoking " is the only "prepared opium " expressly subject to such duty. It is no answer to this to say that opium containing less than nine per cent of morphia is also subject to the same duty, and that the term " opium " in this clause is broad enough to include both crude and prepared opium. For, if " opium " as there used does not exclusively refer to crude opium, and if opium prepared for other uses than that of smoking is, when containing less than nine per cent of morphia, subject to the duty of twelve dollars a pound, " prepared opium subject to duty of twelve dollars per pound " can mean only opium prepared for smoking, which, irrespective of the amount of morphia contained in it, is subject to that duty, or opium having less than nine per cent of morphia and prepared for other uses, which is also subject to like duty. In either case the property charged to have been smuggled is property within the very terms of paragraph 48.

Further, paragraph 48 is not the statute describing the offences and imposing the penalties. Sections 2865 and 3082

are the penal sections, and the description in the one is "goods, wares, and merchandise subject to duty by law," and in the other simply "merchandise." While in an indictment under those sections it might not be sufficient to use only those words in describing the property charged to have been smuggled, because they are too general and do not sufficiently identify the property, yet, any words of description which make clear to the common understanding the articles in respect to which the offence is alleged are sufficient. There can be no doubt that the defendant knew exactly what he was charged with having smuggled, and that the description was so precise and full that he could easily use a judgment under these indictments in bar of any subsequent prosecution. It is true some parol testimony might be required to show the absolute identity of the smuggled goods, but such proof is often requisite to sustain a plea of once in jeopardy. It is no valid objection to an indictment that the description of the property in respect to which the offence is charged to have been committed is broad enough to include more than one specific article. Thus, an indictment charging the larceny of "a horse, the property of A B," is not overthrown by proof that A B is the owner of many horses, any one of which will satisfy the mere words of description. Yet, to make available a judgment on such an indictment in bar of a subsequent prosecution, something beside the record might be required to identify the property mentioned in the two indictments. See *United States* v. *Claflin*, 13 Blatchford, 178. In that case, which was one of smuggling, the description was "certain goods, wares, and merchandise, to wit: six cases containing silk goods of the value of $30,000, a more particular description of which is to the jurors unknown," and it was held sufficient. The rule is that if the description brings the property, in respect to which the offence is charged, clearly within the scope of the statute creating the offence, and at the same time so identifies it as to enable the defendant to fully prepare his defence, it is sufficient.

Further, no objection was made to the sufficiency of the indictments by demurrer, motion to quash, or in any other

manner until after the verdict. While it may be true that a defendant by waiting until that time does not waive the objection that some substantial element of the crime is omitted, yet he does waive all objections which run to the mere form in which the various elements of the crime are stated, or to the fact that the indictment is inartificially drawn. If, for instance, the description of the property does not so clearly identify it as to enable him to prepare his defence, he should raise the question by some preliminary motion, or perhaps by a demand for a bill of particulars; otherwise it may properly be assumed as against him that he is fully informed of the precise property in respect to which he is charged to have violated the law.

In this connection, also, reference may be made to section 1025, Revised Statutes, which provides that "no indictment . . . shall be deemed insufficient . . . by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant." This, of course, is not to be construed as permitting the omission of any matter of substance, *United States* v. *Carll*, 105 U. S. 611, but is applicable where the only defect complained of is that some element of the offence is stated loosely and without technical accuracy. For these reasons we are of opinion that the first and principal challenge of the indictment cannot be sustained.

A second objection, which is made to all of these counts with the exception of the ninth in the second indictment, is that a *scienter* is not alleged. But one good count is sufficient to sustain the judgment, and as it is conceded that the ninth is not open to the objection, it is perhaps unnecessary to consider whether the others are justly exposed to such criticism. Nevertheless, we have carefully examined them and are of the opinion that to none is this objection well taken. They charge that the defendant "did wilfully, unlawfully, and knowingly, and with intent to defraud the revenues of the United States, smuggle and clandestinely introduce, into the United States" the prepared opium. It is stated in 1 Bishop Crim. Pro. (3d ed.) § 504, that "the words 'knowingly' or 'well knowing' will supply the place of a positive averment

that the defendant knew the fact subsequently stated." And
to like effect are the authorities generally. The language of
the indictment quoted excludes the idea of any unintentional
and ignorant bringing into the country of prepared opium
upon which the duty had not been paid, and is satisfied only
by proof that such bringing in was done intentionally, know-
ingly, and with intent to defraud the revenues of the United
States. Indeed, the word "smuggling," as used, carries with
it the implication of knowledge. In Bouvier, vol. 2, p. 528,
smuggling is defined: "The fraudulent taking into a country,
or out of it, merchandise which is lawfully prohibited." And
such is the general understanding of its meaning. We have,
therefore, both the use of a term which implies intentional mis-
conduct and a specific averment that what was done was done
wilfully, knowingly, and with intent to defraud. But it is
said that there should be a specific averment that the defend-
ant knew that the duty had not been paid on the opium, and
in support of that contention *United States* v. *Carll, supra,* is
referred to. In that case an indictment charging the defend-
ant with passing a counterfeited obligation of the United
States was held fatally defective in failing to allege that the
defendant knew that the obligation was counterfeited, and
this notwithstanding that the language of the indictment.
closely followed the words of Rev. Stat. § 5431, the section
under which it was found, and which provides that "every
person who, with intent to defraud, passes, utters, publishes,
or sells . . . any falsely made, forged, counterfeited, or
altered obligation, or other security, of the United States,
shall be punished," etc., the court saying that "knowledge
that the instrument is forged and counterfeited is essential to
make out the crime; and an uttering, with intent to defraud,
of an instrument in fact counterfeit, but supposed by the
defendant to be genuine, though within the words of the
statute, would not be within its meaning and object." But
the analogy between the two cases is not perfect. The pur-
pose of the statute in that case is the protection of the bonds
or currency of the United States, and not the punishment of
any fraud or wrong upon individuals. Hence it is not suffi-

cient to charge that a party is trying to defraud an individual, and, in carrying that fraud into execution, uses a bond or note of the United States which he may suppose to be genuine, but which in fact is counterfeit. For that discloses no criminal intent in respect to the bond or note, but only a criminal intent as against the individual sought to be defrauded, an intent which may exist independent of any knowledge of the character of the bond or note. The purpose of the sections under which these indictments were found is the protection of the revenues of the United States, and while those revenues may be in fact lessened by one ignorantly and innocently bringing into the country property subject to duty upon which the duty is not paid, there can be no intent to defraud those revenues unaccompanied by knowledge of the fact that the duties have not been paid. The wrongful intent charged is not to violate the revenue laws of the United States, which might be satisfied, as suggested by counsel, by proof that defendant wilfully, knowingly, unlawfully, and fraudulently failed to have the opium invoiced or included in the manifest of the cargo of the steamship, or to pass the packages containing it through the custom-house, or submit to the officers of the revenue for examination. An intent to defraud the revenues implies an intent to deprive such revenues of something that is lawfully due them, and there can be no such intent without knowledge of the fact that there is something due. So, when the charge is made that the defendant wilfully, unlawfully, and knowingly, and with intent to defraud the revenues of the United States, smuggled, and clandestinely introduced into the United States, prepared opium, it carries with it a direct averment that he knew that the duties were not fully paid, and that he was seeking to bring such goods into the United States without their just contribution to the revenues. For these reasons we think that this objection to the indictment also fails.

Again, it is insisted that the court erred in permitting one Nathan Blum, an accomplice who had turned State's evidence, to give testimony as to the contents of a letter he had written to the defendant, and also of letters written by defendant to parties in British Columbia. According to the bill of ex-

ceptions the testimony in respect to the first letter was given by the witness while testifying as to the third count of the second indictment, and as the jury found the defendant not guilty under that count, the error, if error there was, may be considered as immaterial.

With reference to the letters written by the defendant, the witness testified that they were all copied in the letter-books belonging to the Merchant Steamship Company, and were all in the possession of the defendant. Whereupon the following proceedings were had, as shown by the bill of exceptions:

"Mr. Gearin, (counsel for the United States): Counsel says they have not had any notice. We now give counsel and the defendant notice to produce these letters and the copies they have — the letters written to Dunbar and letter-press copies of letters written by him.

"Mr. McGinn, (counsel for defendant): There are no such letters in existence. We have not got any such letters.

"Court: If you have the letter-books of the company you can produce them.

"Mr. McGinn: Does your honor make a ruling on the request of counsel?

"Court: You have objected to this evidence on the ground that he has not produced these letters. The witness says they are in the letter-book itself of Dunbar & Company.

"Witness: Yes, sir.

"Court: Counsel has notified you that you may produce these letter-books.

"Mr. McGinn: We have no such letters and never have had.

"Court: You may produce the letter-books if you want to."

No objection was made to the time or manner in which this notice was given; no suggestion that the defendant wished time to look over the letter-books and among his papers to see what he could find corresponding in any degree to the description given by the witness. On the contrary, the positive declaration was that he had no such letters, and never had them. Under those circumstances there was no error in permitting the witness to testify as to what he claimed

to have been in the letters. According to his testimony the originals or the letter-press copies thereof were in the possession of the defendant, and as the defendant failed to produce them, and could not be compelled to produce them, the door was opened for secondary evidence of their contents. Of course, whether any such letters were ever written, and what, if written, they contained, presented a question of fact depending on the credibility of the witness, and that question of fact was for the consideration of the jury, and not for the determination of the court.

Again, error is alleged in respect to the admission in evidence of a certain telegram. The facts in respect to this matter are as follows: The witness Blum was stating that defendant telegraphed certain things to him. An objection being raised, he produced a type-written telegram, and said that he received it from the defendant. It was further objected that it was not the original, the one prepared and signed by the defendant; whereupon the witness testified that it was delivered to him by the telegraph company, and that he afterwards talked with the defendant about it, who confirmed it and admitted that he had sent it. Thereupon the court permitted the telegram to be read in evidence. In this there was no error. Whatever may be the rule in other cases, an admission by defendant that the writing which is offered is the message which he sent, is sufficient to justify its introduction in evidence. An admission as to a writing is like an admission of any other fact, and when a competent witness testifies that a certain writing, which he produces, was received by him, and that the defendant admitted that he sent it to him, he has laid the foundation for the introduction of the writing, and this though it be not in the handwriting of the defendant.

Again, it is objected that the court erred in permitting a witness, Sigmund Baer, to testify that he had appropriated the proceeds of the sale of some of the opium charged to have been smuggled, in part to take up a draft drawn by the defendant, on the ground that the paper was itself the best evidence as to the party by whom it was drawn. The wit-

ness at first called the paper a note, but afterwards said that it was a draft drawn by the defendant on Blum, and was held by a bank for collection; that he paid the money to the bank, took up the draft, and forwarded it to Blum. The record is silent as to whether this paper was produced in evidence or not, but even if produced it would not disclose by whom, or with what moneys it was paid, or what disposition was made of it after payment. Those were independent facts, to be shown by other testimony, and it was not error to permit the witness to give such other testimony. The substantial matter was the disposition of the moneys realized from the sale of the opium, and the witness who handled such moneys was competent to testify as to the disposition he made of them. Part he used in taking up a draft, and part he deposited to the credit of the defendant in the Anglo-California Bank. This he said he did in obedience to instructions. Calling the paper a draft drawn by defendant on Blum was a mere general description, and as the receipt of the paper and its subsequent transmission to Blum were only incidental to the disposition of the moneys, it was not improper to thus generally describe it. In this connection we may notice the following instruction:

" The ninth count charges the defendant with having facilitated the transportation of 200 pounds of opium on the 5th day of February, 1892. Now, this is the opium that it is claimed was sold probably by Sigmund Baer. I think it is claimed to be the opium sold by Sigmund Baer, as is claimed, for Dunbar and Blum. Sigmund Baer testifies that Dunbar's drafts were paid out of the sale of opium, and it is claimed it was the sale of this opium, and that the balance of the money after the payment of the draft was deposited to Dunbar's credit. If that is so, the circumstances would be inconsistent with innocence on the part of Dunbar of this transportation, and the tendency would be to connect Dunbar with it, because ordinarily men do not deposit money to pay the debts of other people or deposit it to the credit of other people unless that money belongs to those people and there is some understanding that it is to be done. Dunbar has denied that he has any

knowledge of any transaction of this character. Whether this denial is overcome by the testimony on the part of the government is left to your judgment."

The complaint of this is, first, that it misrepresents the testimony; and, second, that it attempts to enforce as an absolute conclusion from such testimony, thus misrepresented, that which is only a possible inference therefrom. We do not think that it is justly exposed to this criticism. It refers to the testimony of the witness Baer, and, stating that the defendant denies any knowledge of the transaction as testified to by Baer, submits to the jury the question as to whether this denial is overcome by the testimony offered by the government. If so overcome, and the jury find that not only was the money, the proceeds of the sale of the smuggled opium, in fact applied to defendant's benefit, but also that it was so applied with his knowledge, a legitimate inference would be that he was connected with the importation, for ordinarily men do not dispose of money in the manner indicated, unless it belongs to the party for whom it is so used. This instruction, it must be borne in mind, is given in reference to that count in the indictment which charges the defendant with facilitating the transportation of the opium, and not those which charge him with being himself the party who was guilty of smuggling. If he knowingly permits the appropriation of the proceeds of the smuggled opium to his own benefit, either in the payment of his drafts or in increasing the amount of his account at the bank, he is helping to make successful the unlawful venture, and certainly those facts would be inconsistent with the idea of his entire innocence in respect to the matter. It will also be borne in mind that this instruction is not that if these things be so the defendant must be found guilty, but only that they are inconsistent with his innocence in respect to the transportation. We think that the question of fact was fairly left to the jury, and that the inference from those facts, if found against the defendant, was not too strongly stated.

Again, error is alleged in the instructions in respect to the matter of reasonable doubt. It is urged that the court failed

to instruct the jury as to what constitutes a reasonable doubt, and that in speaking of it it used the term "strong probabilities." Repeated attempts have been made by judges to make clear to the minds of the jury what is meant by the words "reasonable doubt;" but, as said by Mr. Justice Woods, speaking for this court, in *Miles* v. *United States,* 103 U. S. 304, 312, " attempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." And so, when the court in this case said to the jury, " I will not undertake to define a reasonable doubt further than to say that a reasonable doubt is not an unreasonable doubt — that is to say, by a reasonable doubt you are not to understand that all doubt is to be excluded; it is impossible in the determination of these questions to be absolutely certain. You are required to decide the question submitted to you upon the strong probabilities of the case, and the probabilities must be so strong as, not to exclude all doubt or possibility of error, but as to exclude reasonable doubt," it gave all the definition of reasonable doubt which a court can be required to give, and one which probably made the meaning as intelligible to the jury as any elaborate discussion of the subject would have done. While it is true that it used the words "probabilities" and "strong probabilities," yet it emphasized the fact that those probabilities must be so strong as to exclude any reasonable doubt, and that is unquestionably the law. *Hopt* v. *Utah,* 120 U. S. 430, 439; *Commonwealth* v. *Costley,* 118 Mass. 1, 23.

It is further objected that the court erred in stating to the jury that the testimony of certain witnesses was of the character of corroborating testimony, that is, testimony tending to support that given by accomplices. As the record fails to preserve all the evidence, either that of the accomplices, or that of the corroborating witnesses, we are unable to say from the reference thereto made by the court in its charge that there was any error in this respect. So far as we can gather from what is before us it would seem that the court made no mistake in pointing out certain items of testimony as corroboratory to that furnished by the accomplices. One purpose in

these references, as stated in the charge, was to indicate to the jury that as to certain counts there could be no conviction, because as to them the testimony was only that of an accomplice and uncorroborated. Of course the defendant cannot complain of an instruction that no conviction can be had on any count supported by only the uncorroborated testimony of an accomplice.

These are the substantial questions presented by counsel. We have examined them all carefully, and are of the opinion that no substantial error appears in the record. The judgment is, therefore,

*Affirmed.*

MR. JUSTICE FIELD dissented.