# LE COINTE

*v.*

# THE UNITED STATES.

CRIMINAL .LAW ; LARCENY ; MARRIED WOMEN ; PLEADING AND
 PRACTICE ; ADMISSION OF TESTIMONY OUT OF REGULAR
 ORDER ; JUDICIAL DISCRETION ; EVIDENCE ; EXPRES-
 SION OF OPINION BY TRIAL COURT IN CHARGE ;   ·
 REASONABLE DOUBT.

1. Where an indictment for larceny lays the ownership of the prop-
 erty in a woman, and the testimony shows her to have been a
 married woman, but further shows that she had acquired the
 property after separating from her husband and not from or
 through him, the indictment is good ; *construing* the Married
 Woman's Act, R. S. D. C., sec. 727.

2. The admission of testimony out of its regular order is within the
 sound discretion of the trial court whose action in that respect
 will not be reviewed except in case of manifest abuse.

3. The practice of expressing an opinion in a charge to the jury is to
 be avoided where possible.   In Federal courts the trial judge if
 he thinks proper may sum up the facts, taking care to charge
 the law correctly, and finally leave every question of fact to the
 decision of the jury.

4. The testimony of one in a position to hear or see a thing if it had
 occurred and who might under all the circumstances with the
 same degree of reason have heard or seen it in that event, while
 not so strong or satisfactory as that of one who says he did hear
 or see it, is competent, and it is error for a trial court to charge
 the jury that such negative testimony is not a contradiction in
 law of positive testimony to the fact.

5. It is not error for a trial court in a criminal case to modify a prayer
 for instruction which says that proof beyond a reasonable doubt
 must so satisfy the jury "as to leave no other conclusion possi-
 ble," by striking out the word "possible."

6. It is error for the trial court in such a case to charge the jury that if
 it is reasonable for them to conclude after considering all the
 facts and circumstances that the defendant is innocent, they
 should acquit, but if it is unreasonable to conclude the defend-
 ant is innocent, they should find him guilty.

No. 488.   Submitted June 17, 1895.   Decided June 18, 1895.

HEARING upon an appeal by the defendant from a judgment on verdict in a prosecution for the crime of larceny. *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Edwin Forrest* and *Mr. Warren C. Stone* for the appellant.

*Mr. Tracy L. Jeffords*, Assistant United States Attorney for the District of Columbia, for the United States.

Mr. Justice SHEPARD delivered the opinion of the Court:

The appellant, George Le Cointe, was duly indicted and has been tried and convicted of larceny of certain jewelry alleged to be the property of Dolly Ballard.

The first assignment of error is founded on the refusal of the court to instruct the jury to return a verdict for the defendant, on the ground that the ownership of the stolen property has been improperly laid in the indictment. The testimony showed that the alleged owner, Dolly Ballard, was a married woman; but that she had been separated from her husband for about six years and had supported herself; that she had acquired the property a few months before the alleged theft, but not from or through her husband. This brought the property clearly within the scope of the Married Woman's Act, and sustained the averment of the indictment. R. S. D. C., sec. 727; Compiled Stat. D. C. page 274, sec. 23. Hence, the motion was properly denied.

The foregoing motion was made after the evidence was all in, and a controversy then arose concerning the evidence of ownership that had been given on the part of the Government. Before passing on the motion, the presiding justice permitted the witness, Dolly Ballard, to be recalled, and after hearing her evidence respecting ownership, overruled it. An exception was taken to the action of the court, and the second assignment of error is based thereon.

No legal right of the defendant was impaired by the admission of this evidence.   He sustained the loss of no testimony that he might have produced because of the stage of the trial at which the evidence had been introduced.   He stands upon a bare legal technicality.   As a rule, testimony will not be admitted out of its proper order, or after the evidence has been once closed ; but the rule is not fixed and invariable.   The admission of further evidence, when so offered, is within the sound discretion of the trial judge, and will not be reviewed except where there has been manifest abuse.   Under the facts, as recited in the bill of exceptions, there was no abuse of discretion in this instance, but a just and proper exercise thereof.

Another assignment of error is founded on several exceptions taken to the general charge of the court.   The objection is that the trial justice expressed too freely his opinion upon the weight of the evidence, and in a way calculated to unduly prejudice the defendant's case with the jury.   As the judgment must be reversed upon other grounds, it is not necessary to set out the several paragraphs of the charge objected to, or to decide all the points made.   They may not arise on a second trial.   Greater latitude is permitted a trial judge in the courts of the United States, in the manner of charging the jury, than is ordinarily allowed in the courts of many of the States.   If he thinks proper, he may sum up the facts, taking care to charge the law correctly, and finally to leave every question of fact to the decision of the jury.   The practice of expressing an opinion is rather to be avoided, however, where possible.   The cases on the subject* have been carefully reviewed and the rule of practice well stated for the observance of the courts in the recent case of *Starr* v. *United States*, 153 U. S. 614, 624, 625.

Among these exceptions, however, there is one requiring special notice.   It appeared from the evidence that the defendant and the prosecutrix had maintained improper relations with each other.   After a carousal they went to her

room and slept together. When the woman awoke in the morning she missed the diamond ear-rings from her ears and a diamond ring from her finger, and accused the defendant of taking them. He denied the theft and left. She went immediately to Baltimore, and remained forty-eight hours. Upon her return and during several days she wrote defendant six notes each requesting a meeting, and some of them threatening him with trouble. Defendant made no response, and failed to meet her at the times or places appointed ; whereupon, she caused his arrest upon the charge of larceny. When in jail, on March 3, he wrote her a note, asking her to come to see him alone, and stating that she would be kindly received and pleased with her trip. She went to the jail in company with a detective named Horne. According to her account of the interview, defendant told her she could not prove the offence, but that if she would publish a statement exonerating him and saying that he had been wrongly accused, and come for him in a cab the next day, he would give her a note where the things were. She returned the next day with another detective named Weedon, and talked with him again, and he asked why she had not exonerated him in the newspaper, and again promised her that if she would do so, he would give her the diamonds.

Horne and Weedon testified to hearing these statements. The Government then called Robert Smith, who testified that he was in the room at the second visit, during the whole interview ; that he came there at the defendant's solicitation ; that he was talking to Weedon while the parties conversed, and was not more than one or two feet further from them than he was ; that his attention was not attracted by the loud tone of the voices of the parties (as Weedon had said his was), and he did not hear any such conversation. He further testified that he came to hear what might take place between the parties, at defendant's request, and that as soon as the woman and Weedon left, defendant asked him to remember the time and place of the conversation, as he ex-

pected they would testify that he had made a confession. Ransdell, who was a guard at the jail, was called by the defendant, and testified that he was present and in the room during the whole of the conversation upon the first visit; that he was on duty letting visitors in and out; that he heard the parties' voices and noticed that they were talking to each other, but paid no attention to them, and heard no part of their conversation.

In summing up the evidence, in the course of the charge, the court said: " There has been some comment here that those officers (Horne and Weedon) are contradicted, one by Ransdell and the other by Smith; but that is not what we call contradictions in law. Smith and Ransdell simply testified that they did not hear anything. The officers testified that they did, and Ransdell, especially, if you remember, testified that he did not listen—did not pay any attention. I do not remember what Mr. Smith said, whether he was listening or trying to listen or not; but the mere fact that you and some other person being in this room and a conversation takes place between two men, and one heard and the other did not; and one testifies that he did hear, and the other testifies that he did not; that is not a contradiction ; because two men might be present, and one might hear while the other's attention might be directed to something else ; and the other might not be. However, you have the right to consider the fact that those men were there, and you should consider it, that Smith and Ransdell were there and they did not hear anything ; but it is not what we consider in law the contradiction of a witness."

In so far as the evidence of Ransdell is concerned, there was no material error in this. Ransdell was there engaged in his duty as guard at the door. He saw that a conversation was going on between the interested parties ; but he had no interest in it, paid no attention to it, and had no recollection about it. But the case of Smith was somewhat different. He came at the request of the defendant to witness the interview, was engaged in nothing else, was

within a foot as near as Weedon to the parties while they talked, but heard no loud tones nor the aforesaid damaging statements of the defendant.   It does not appear that he was at all defective in hearing.

The testimony of one in a position to hear or see a thing if it had occurred, and who might, under all the circumstances, with the same degree of reason, have heard or seen it in that event, is not so strong or so satisfactory as that of one who says that he did hear or see it.   Such negative testimony is competent, however, and cannot be said to be altogether without weight as tending to contradict the positive testimony to the fact; at least, the court is not justified in so charging the jury.   They are the judges of the credibility of the witnesses and of the weight of their testimony.   Little as the evidence of Smith may have been worth, it was nevertheless to be considered and weighed by the jury.   *Davis* v. *N. Y., N. H., &c., Railroad Co.,* 159 Mass. 532, 533; *State* v. *Gee,* 85 Mo. 647, 653; *Rhodes* v. *Chicago & G. T. Railroad Co.,* 58 Mich. 263, 266; *Murray* v. *M. P. Railroad Co.,* 101 Mo. 236, 242; *K. C., &c., Railroad Co.* v. *Lane,* 33 Kan. 702, 706.

Having the witnesses all before them, with some knowledge of their character, hearing that the witness, Smith, had come to the meeting to observe what might be said and done there, and knowing what his opportunities were to overhear the conversation, if any such took place in tones audible to bystanders like Weedon and himself, the jury might possibly have regarded his testimony as, to some extent, contradicting Weedon, had it not·been for the charge of the court in the conclusion of his comment upon the evidence.

We cannot say that the jury may not have been influenced by the charge, to the prejudice of the prisoner, and must therefore hold the exception well taken.

At the conclusion of the evidence, the defendant submitted the following special prayer, and asked that it be read to the jury :

" The jury are instructed that the law presumes the defendant innocent until proven guilty beyond a reasonable doubt, and if you can reconcile the evidence before you upon any reasonable hypothesis consistent with the defendant's innocence you should do so, and in that case find him not guilty.   Proof beyond reasonable doubt means proof to a moral certainty, and it must satisfy the judgments and consciences of the jury as reasonable men, and, applying their reason to the evidence before them, that the crime charged has been committed by the defendant, and so satisfies them as to leave no other reasonable conclusion possible."

The court gave the prayer, after striking therefrom the concluding word "possible."   There was no error, we think, in this action of the court.   The instruction was ample without that additional word.   *Hopt* v. *Utah*, 120 U. S. 430, 440 ; *Coffin* v. *United States*, 156 U. S. 432, 452 ; *Dunbar* v. *United States*, 156 U. S. 185, 199.

The defendant in a criminal case, is entitled to the presumption of innocence, and the benefit of every reasonable doubt that may arise throughout the case, and the court must so instruct the jury.   A plain instruction to this effect is all that is required, and unless there be something exceptional in the case, requiring explanation or illustration of the rule, we think the better practice is to avoid it.   In ordinary cases, the jury can have no difficulty in understanding its meaning and application.   *Dunbar* v. *United States*, 156 U. S. 185, 199.

The beneficial effect of the foregoing instruction was, however, taken away by the following remarks of the court, which accompanied the prayer as given :

" That is to say, gentlemen, when you look at all the evidence, not isolated facts and witnesses, but looking at it fully and considering the whole thing, considering the facts, does it appear to your judgment and satisfaction, when you look at these facts and consider in your mind the evidence, that it is reasonable to conclude that the defendant is inno-

cent? If it is reasonable for you to so conclude, you should acquit him. If it is unreasonable to conclude that the defendant is innocent, you should find him guilty."

The error in the foregoing is patent, and we need not pause to discuss it.

*The judgment must be reversed, and the cause remanded with directions to award a new trial. And it is so ordered.*