## ROSENBLATT et al. v. UNITED STATES. *

(Circuit Court of Appeals, Second Circuit. January 12, 1921.)

No. 102.

1. **Larceny ⊂⇒30(1)—Indictment not insufficient for failure to specify number of articles stolen.**

    Counts in an indictment under Act Feb. 13, 1913, § 1 (Comp. St. § 8603), charging defendants with receiving and having in possession a large number of tierces of lard, the exact number being to the grand jurors unknown, which constituted a part of an interstate shipment, knowing that the same had been stolen, *held* not insufficient because they did not specify the number of tierces.

2. **Indictment and information ⊂⇒181—Not valid objection that description of property is broader than proof.**

    It is no valid objection to an indictment that the description of the property in respect of which the offense is charged to have been committed is broad enough to include more than the proof specifically shows.

3. **Criminal law ⊂⇒1056(1)—Instructions not excepted to are not reviewable.**

    Instructions to which no exception is noted are not reviewable, though error is assigned thereon.

In Error to the District Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against Joseph Rosenblatt and Samuel Davidson, who were convicted of knowingly receiving stolen property from an interstate shipment of freight, and also having in their possession such stolen property with knowledge of the theft, and they bring error. Affirmed.

Samuel Hershenstein, of New York City (Edward T. McLaughlin, of New York City, of counsel), for plaintiffs in error.

Francis G. Caffey, U. S. Atty., of New York City (John E. Joyce, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. On May 28, 1919, the Brennan Packing Company shipped from Chicago, Ill., to New York, 800 tierces of choice steam lard by way of the Erie Railroad Company. It was consigned to the order of the Brennan Packing Company, Cunard Line, account of Co-operative Wholesale Society. On June 4, 1919, 100 tierces arrived at Jersey City and were delivered aboard the steamship Mauretania and were transported to Liverpool. The remaining 700 tierces were placed on an Erie barge, No. 341, and remained on this vessel at Jersey City until the night of June 17, 1919. On that night 334 tierces were stolen from barge No. 341, and on June 18, 1919, the balance of the shipment of 700 tierces, with the exception of 3, was delivered aboard the steamship Borenquin, and was subsequently carried to Liverpool. The 334 tierces stolen are the subject of the larceny here in question.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 254 U. S. —, 41 Sup. Ct. 536, 65 L. Ed. —.

The plaintiffs in error, together with Morris Rosenblatt, were the proprietors of a restaurant at 624 Sixth avenue, New York City. Their codefendants, Feuer, Chapman, and Verkayk, were shown to be visitors at this restaurant subsequent to June 17, 1919. On June 16, 1919, Feuer, an acquaintance of Joseph Rosenblatt for about two years, called at the restaurant. One Gold, the manager of the restaurant, was asked if he could find a buyer for the tierces of lard. Later that day, Joseph Rosenblatt promised Gold to obtain samples of the lard to exhibit to prospective buyers, and he did produce such samples. Joseph Rosenblatt, by telephone, offered tierces of lard to persons for sale and the testimony showed that he reported these conversations to the plaintiff in error Davidson. Gold produced one purchaser who bought 100 tierces. This sale was made through the plaintiffs in error on June 20, 1919, and the lard was sold at 29 cents a pound. A check in payment was drawn to the order of Gold, as a deposit, and Gold gave the check to the plaintiff in error Davidson. On June 23 Davidson returned the check to the purchaser, and then a check for $1,000 was drawn by the purchaser to Gold's order, and the reason given therefor was that the purchaser knew Gold, but did not know the plaintiffs in error.

At the request of the plaintiffs in error, this lard was delivered to the Merchants' Refrigerating Company on June 23 by a truckman whose name was given as McDonald. Two of the tierces were delivered at the purchaser's store. The plaintiff in error Davidson accompanied the truckman to the Merchants' Refrigerating Company, and there met the purchaser of the lard, and made a demand for payment of the trucking bill. They went to the purchaser's place of business, and five $1,000 Liberty bonds were given in payment. One of these $1,000 bonds was given to the plaintiff in error Davidson, on account of the purchase price, and he gave the purchaser a receipt. After the lard was weighed and placed in the warehouse, the weights were figured out and returned to the plaintiff in error Davidson by the purchaser, at the restaurant. There the plaintiffs in error and the purchaser figured out the cost, and part payment was made in Liberty bonds, the balance by check on June 25th. The codefendants Feuer and Chapman later met the plaintiffs in error at the restaurant and made a division of the Liberty bonds. Contemporaneously with the sale of the stolen lard, as above narrated, the codefendants Feuer and Chapman made a sale to David C. Link Company of 350 tierces of lard. The same truckman, who used a fictitious name, delivered 78 tierces to the Terminal Warehouses on June 25, 1920, and delivered in all 166 tierces. The balance sold by Feuer and Chapman were never delivered. The Liberty bonds given by the plaintiff in error Davidson to the truckman on June 23 to pay the trucking charges for this sale to the Link Company, is a charge for hauling 78 tierces.

The indictment contained four counts, naming as defendants, in addition to the plaintiffs in error, four others, Isidore Feuer, James Chapman, Albert G. Verkayk, and Morris Rosenblatt. The first count of the indictment charged conspiracy on the part of the six defendants to commit an offense against the United States and in violating the

act of Congress approved January 13, 1913 (37 Stat. 670). It alleged a conspiracy to steal and unlawfully carry away and take a large number of tierces of choice steam lard moving in interstate commerce, and to receive and possess such lard after it had been stolen. The second count charged the same defendants with larceny of the lard on June 17, 1919. The third count accused them of knowingly receiving the stolen lard. The fourth count, that they had possession of the lard with knowledge of the theft.

The verdict of the jury established the guilt of Feuer, Chapman, and Verkayk on the second and third and fourth counts, and of the plaintiffs in error on the third and fourth counts. There was no report as to the guilt or innocence as to any defendants on the first count, nor was a verdict returned as to the plaintiffs in error on the second count. The defendant Morris Rosenblatt was acquitted.

The evidence in the case, some of which is narrated above, required the submission of the question of guilt or innocence of the plaintiffs in error to the jury. After the rendition of the verdict, the District Judge denied the motions of the plaintiffs in error to set aside the verdict. The verdict of guilt as to the plaintiffs in error is fully justified by the evidence, and the judgment below must be affirmed, unless there be error committed in the course of the trial.

[1] There are 15 errors assigned, most of which are not now urged. It is contended that counts 3 and 4 of the indictment are insufficient, but upon reading the indictment it is apparent that the third and fourth counts contain every necessary allegation to acquaint the defendants with the charge they were required to meet. It is charged that on a day certain the defendants had possession of a large number of tierces of choice steam lard and that the same were stolen. It is charged that on the 20th of June, 1919, the defendants unlawfully and willfully received certain goods and chattels, to wit, a large number of tierces of choice steam lard of great value, the exact number of said tierces and value thereof being to the grand jurors unknown, and that the same was part of an interstate shipment of freight, and that the defendants well knew that the same had been stolen, and that the defendants well knew of the theft of the same while it was in the possession and under the control of the Erie Railroad Company.

The fourth count alleges that the same defendants did have in their possession the choice steam lard of great value, and which lard had theretofore been stolen when it was part of an interstate shipment of freight, and that the defendants had such knowledge. The names of the consignor and consignee are alleged in each count. Thus very essential element of the statute defining the defense was pleaded in the indictment. The statute (37 Stat. 670 [Comp. St. § 8603]) makes it unlawful to break the seal of any railroad car containing interstate or foreign shipments of freight or express, or to enter any such car with the intent in either case, to commit larceny therein, and further:

"Whoever shall steal or unlawfully take, carry away or conceal, or by fraud or deception obtain from any railroad car, station house, platform, depot, steamboat, vessel or wharf with the attempt to convert to his own use any goods

or chattels moving as, or which are part of, or which constitute, interstate or foreign shipments, freight or express, or shall buy or receive, or have in his possession, any such goods or chattels, knowing the same to have been stolen. shall in each case be fined not more than $5,000 or imprisoned not more than ten years or both."

But the contention is advanced that the third and fourth counts do not specify the number of tierces. The indictment refers to them as "a large number of tierces of choice steam lard," the number being to the grand jurors unknown. We think the indictment sufficiently alleges the offense as proven, and that the failure to specify the quantity was not a defect in the indictment such as to render it invalid. The defendants could, in advance of the trial, have obtained a bill of particulars setting forth the number of tierces stolen. There can be no doubt but that the plaintiffs in error knew exactly what they were charged with having wrongful possession of. The description in the indictment is so precise and full that they could easily use a judgment under this indictment as a bar to any subsequent prosecution.

[2] It is no valid objection to an indictment that the description of the property in respect of which the offense is charged to have been committed is broad enough to include more than the proof specifically shows. Dunbar v. United States, 156 U. S. 185, 15 Sup. Ct. 325, 39 L. Ed. 390. The circumstances, as disclosed by the evidence here, show that there was but one theft of the lard and one joint possession of the stolen lard. After the government had proven the shipment and the theft of the tierces and the possession of the lard in the plaintiffs in error, they were fully advised of the number of tierces which were the foundation of the substantive counts in the indictment. We find no error in denying the motion to dismiss because of insufficiency of the indictment.

It is further urged that the district judge committed error in not granting a motion to compel the government to state which transaction was meant to be covered by counts 2, 3, and 4 of the indictment— that is, the sale of the lard to Peter; and further error is alleged in permitting the evidence as to the Link transaction to be submitted to the jury without limitation of its relevancy. The record does not disclose an objection to this testimony, nor was a motion or any request made by counsel for the purpose of limiting the testimony of the witnesses Wald and Thomstorff as to the sale of the lard to the Link Company. But this evidence found in the bill of exceptions—and it does not contain all the testimony taken upon the trial—was admissible in determining the guilt or innocence of the defendants as to the third and fourth counts.

There was but one shipment of lard and the evidence shows clearly a theft of 344 tierces. The same truckman hauled all the tierces which were sold and the orders for such trucking came from the plaintiffs in error. The plaintiff in error Davidson paid the truckman the entire trucking charges, and that included the cost of cartage of 102 tierces delivered to Peter and 78 tierces delivered two days later to the Link Company, after the purchase of it through Thomstorff. The indictment charged plaintiffs in error with the receipt and possession of all

of the tierces stolen from the barge of the Erie Railroad Company, and such of the tierces as were delivered to the Link Company were of that cargo. The evidence sufficiently connected the plaintiffs in error with that transaction, so as to require the submission of their guilt or innocence in the receipt and possession of those 78 tierces to the jury.

[3] Error is further assigned to portions of the court's charge as "erroneously given and gravely prejudicial." During the course of the trial, no exception was taken to the alleged errors which we are now asked to consider, nor do the original or amended assignments of error embrace any allegation of error as to the court's instructions. Where no exception is noted to the court's instructions to the jury, we do not consider alleged errors in such instructions. Lewis v. United States, 146 U. S. 370, 13 Sup. Ct. 136, 36 L. Ed. 1011; Hickory v. U. S., 151 U. S. 303, 14 Sup. Ct. 334, 38 L. Ed. 170. And when no error is assigned, and even though error were assigned, it is not a subject of review, if no exception is noted. St. Clair v. United States, 154 U. S. 134, 14 Sup. Ct. 1002, 38 L. Ed. 936.

We are satisfied that the evidence required the submission of the plaintiffs in error's guilt to the jury and they have resolved the questions of fact against the plaintiffs in error and found them guilty. We find no error requiring our disturbing the judgment below in the various suggestions of error called to our attention.

The judgment is affirmed.