HERMAN R. PRELL, MORRIS SINGER AND SAMUEL SINGER, EXECUTORS OF THE LAST WILL AND TESTAMENT OF MAX SINGER, DECEASED, PLAINTIFFS-RESPONDENTS, v. SAMUEL SLAFF, DEFENDANT-APPELLANT.

Submitted January 26, 1934—Decided May 21, 1934.

Before Justices PARKER, LLOYD and PERSKIE.

For the appellant, *Harry Loeb.*

For the respondents, *Samuel M. Mann.*

PER CURIAM.

Of the six specifications of alleged error filed in this cause and relied on by the appellant, only one is even debatable as to sufficiency.

The second specification is that the judgment was against the weight of evidence; the third, that the plaintiffs failed to prove by a fair preponderance of the evidence that the defendant was liable in the amount of the judgment; the fourth, that the court erred in finding at the conclusion of the whole case in favor of the plaintiffs, when it should have found in favor of the defendant; the fifth, that the conclusions of the court below were contrary to law; the sixth, because the conclusions of the court below were contrary to the facts.

The fourth, perhaps, might be supportable if appropriately argued, but we think that it is not appropriately argued as will hereafter appear.

The first specification is that the court erred in allowing certain copies of letters alleged to have been written and mailed by the attorney for the plaintiffs to the defendant to be read in evidence, where it appeared that no notice to produce the originals of said letters had been served either upon the defendant or his attorney. This point we proceed to consider.

The suit was for the sum of $500, which plaintiffs claimed the defendant had promised to pay plaintiffs if the latter would abstain from bidding at a foreclosure sale and thereby facilitate the purchase of the property by the defendant at a nominal bid, the object, as stated, being to save sheriff's fees. The proof tended to show the making of this agreement by parol; that the plaintiffs had performed their part of it by staying away from the sale, both personally and by attorney, and that the defendant had thereby been enabled to become the purchaser at a nominal bid, but that defendant had refused to pay as agreed. One of the issues of fact was whether the defendant had made any such agreement. In support of the plaintiffs' claim that defendant had so agreed, the plaintiffs undertook to show that on two occasions their attorney had mailed a letter to the defendant demanding payment of the $500. Plaintiffs' attorney was sworn as a witness and on cross-examination testified as follows:

"Q. Did you write any letters to Mr. Slaff?. A. I certainly did. Q. Did you ever have any reply to any of these letters? A. No. Q. Do you consider them of any importance? A. I know that he did deny receiving them. That is what he says. Q. Well, haven't you got copies of them? A. Do you want them? Q. You have copies of the letters have—— A. Do you want them? Q. Do you have copies of the letters, yes or no—I am not here to be interrogated? A. Yes."

At the conclusion of the testimony of this witness plaintiffs rested, counsel saying: "That is all, with one exception. Counsel has borne out in cross-examination that letters were sent by this witness acting for the plaintiffs. No notice to produce was served and we should like to offer them in evidence, if your honor please."

The printed book does not show that they were received or that any ruling was made on the offer at that time.

Defendant was then sworn as a witness and on his direct examination testified on the point in question as follows:

"Q. Did you receive any letters demanding payment of this $500—— A. Not that I know of. Q. (Continuing) from Mr. Mann? Did you get any bills from Mr. Mann? A. No."

On cross-examination he was asked:

"Q. Coming back to the place where you received your mail, Mr. Slaff. I ask you, on or about July 14th of this year, did you receive a letter from Mr. Mann? A. I wouldn't say. I don't remember that I did. Q. I will read it to you. Did you ever receive a letter which read as follows:"

(Objected to and not answered.)

"Q. Do you deny you received it? A. I don't know anything about it. Q. I will read to you the following letter written on July 13th, addressed to you c/o Superior Finance Corporation, 625 Main street, Passaic." Counsel then read a letter and asked: "Did you or did you not receive that letter? A. I did not receive it. Q. I read to you."

Objected to, and counsel for defendant replied: "You have denied them, Mr. Loeb, and I think I have a right to read them.

"Mr. Loeb—I haven't denied anything.

"Mr. Krieger—The witness has denied them.

"Mr. Loeb—I object to their being read. Exception."

The letter of July 21st was then read and followed by the question: "Did you or did you not receive that letter? A. No."

The rule of evidence that requires notice to produce relates to documents shown to be in possession of the other party, or admitted to be in his possession, or presumed to be in his possession, where that presumption is not rebutted by denial. If the document is not in the possession of the other party or, what amounts to the same thing, under his control the rule regarding notice to produce seems to be inapplicable.

In *Wigmore on Evidence,* § 1203, the rule on this phase

of the matter is thus stated: "Where by the proponent's evidence the document is traced to the opponent's hands—as by the presumption from mailing—and the opponent denies the receipt of it, then, even taking the opponent's testimony at its highest value, the whereabouts of the document becomes an unexplainable mystery, and the case is virtually one of loss; so that the proponent should be allowed to prove the contents without having given notice; while, if we take the opponent's testimony as false and assume that he has in truth received the document, his denial is equivalent to an express refusal to produce, which equally puts the plaintiff in the position of being unable to obtain the document, so that notice is unnecessary." The text seems to be supported by such cases as *Roberts* v. *Spencer,* 123 *Mass.* 397, and *Dunbar* v. *United States,* 156 *U. S.* 185 (at *p.* 194).

The courts appear to be not entirely at one on the point, but the foregoing reasoning seems to be logical. We are not aware of any case in this state directly apposite, although in *Durbrow* v. *Hackensack Meadows Co.,* 77 *N. J. L.* 89 (at *p.* 91) ; 71 *Atl. Rep.* 59, it was deemed by this court, so far as one of two parties was concerned, that such party denied having the document in question and in effect denied its existence.

In *Den* v. *M'Allister,* 7 *N. J. L.* 55, the discussion seems to have proceded upon the postulate that a notice to produce is given to one actually or presumably in possession of the original document desired to be proved.

Examining the foregoing quoted testimony, which we think is all that the case contains upon the subject, we think it sufficiently appeared that the defendant, to whom it was alleged the two letters had been mailed, substantially denied having received them or knowing anything about them; and consequently if the rule laid down in *Wigmore* is to be followed, the plaintiffs, upon such denial, were entitled to put them in evidence, which in effect they did by reading them to the court. We do not wish to be understood as approving of the tactics pursued in the present case by way of reading the letters allowed, and content ourselves with intimating

the rule as above. We incline to think that there was no error, therefore, in permitting the letters to be read in evidence, as in effect they were.

This result on the only point which seems to be adequately raised, as well as argued, would seem to call for an affirmance of the judgment below.

No question was raised in the trial court, nor is any raised here, touching the legal validity of the contract sued on, and we confine the decision to the case as presented.