**H. Grant HEATON, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 19689.**

United States Court of Appeals Ninth Circuit.

Nov. 16, 1965.

Rehearing Denied Dec. 23, 1965.

* Of the Court of Claims, sitting by designation.

Valentine C. Hammack, Mary Eschweiler, San Francisco, Cal., for appellant.

J. Walter Yeagley, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Cecil F. Poole, U. S. Atty., Kevin T. Maroney, Washington, D. C., Gary W. Hart, Asst. Sol., Dept. of Interior, Washington, D. C., for appellee.

Before CHAMBERS, MERRILL, and BROWNING, Circuit Judges.

BROWNING, Circuit Judge:

Appellant was convicted under an indictment charging that on December 2, 1959, in San Francisco, California, he willfully and knowingly imported merchandise "the country of origin of which was China (other than Formosa) to-wit: 23 art objects of a value of $23,925.00, without such dealings having been specifically authorized by the Secretary of the

Treasury * * * in violation of Section 5(b) of Title 50 App. United States Code, (Trading with The Enemy Act) 31 C.F.R., Section 500.204."

 Section 5(b) of the Trading with the Enemy Act, 50 U.S.C.A.App. § 5(b) (1946), permits the President or his designee to prohibit the importation of "any property in which any foreign country or a national thereof has any interest." The President is authorized to act "under such rules and regulations as he may prescribe, by means of instructions, licenses, or otherwise," and the statute makes it a crime to willfully violate the provisions of "any license, order, rule or regulation issued thereunder." [1]

The President delegated his authority under section 5(b) to the Secretary of the Treasury by Executive Order No. 9193, 7 Fed.Reg. 5205 (1942), and authorized the Secretary "to prescribe from time to time, regulations, rulings, and instructions to carry out the purposes of this Executive Order."

The Secretary issued regulations requiring licensing of designated imports. Appellant was convicted of violating section 500.204 of these regulations, which prohibits the importation without a license of "any merchandise" "situated outside the United States * * * the country of origin of which is China (except Formosa)." 31 C.F.R. § 500.204.

## I

 Appellant concedes that the property originated in mainland China and that he imported it without a license, but he contends that the property left China before the effective date of section 500.204 (December 17, 1950), and argues that the licensing requirement must be read as inapplicable to such goods, or, if read to include them, must be held to be retroactive in its operation and hence unconstitutional.

It is clear that section 500.204 requires a license to import goods that left mainland China prior to the effective date of the regulations. However, the importation of such goods is not prohibited. On the contrary, a Statement of Licensing Policies issued concurrently with section 500.204 provides that the importation of mainland China merchandise will be licensed "on submission of documentary evidence * * * of the location outside China * * * of the merchandise at all times since the * * * effective date, and of the absence of any Communist Chinese * * * interest in the merchandise during that period." 31 C.F.R. § 500.204, Appendix, Licensing Policies, ¶ (112).

It would be difficult if not impossible to determine by physical inspection whether particular merchandise originating in mainland China left that country before or after the regulations became effective. It would therefore seem reasonable to require those persons wishing to import such merchandise to apply for a license and to offer satisfactory proof that exportation occurred before the effective date. Appellant knowingly violated this requirement by importing such merchandise without obtaining a license. The violation occurred when the unlicensed importation occurred, long after the regulations became effective. Appellant is not being punished for conduct which was lawful when done.

## II

 Appellant argues that the regulations are arbitrary and unreasonable because they provide that personal affidavits will not be accepted as sufficient proof that goods were outside mainland China before the effective date of the regulations. 31 C.F.R. § 500.204, Appendix, Licensing Policies, ¶ (112).

The regulations provide that such affidavits may be sufficient when the mer-

---

1. Congress clearly had power to make willful violation of the authorized administrative requirements a crime. Yakus v. United States, 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Avent v. United States, 266 U.S. 127, 131, 45 S. Ct. 34, 69 L.Ed. 202 (1924); McKinley v. United States, 249 U.S. 397, 39 S.Ct. 324, 63 L.Ed. 668 (1919); United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1911).

chandise consists of antiques, as may have been true in this instance. Appelland did not submit an application for license supported by affidavits as the regulations provide; and it cannot be assumed that the administrative procedure which appellant did not utilize would have proved futile. Compare Yakus v. United States, 321 U.S. 414, 434, 439, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

Moreover, even if personal affidavits would not have been accepted in appellant's case, the regulation was not an arbitrary or unreasonable exercise of administrative power. On the contrary, it represented a reasoned determination based upon experience demonstrating that this type of documentary proof could not be relied upon.[2]

### III

Appellant argues that section 500.204 of the regulations exceeds the authority conferred by section 5(b)(3) of the Trading with the Enemy Act because the regulation prohibits unlicensed importation of any goods which originated in mainland China whereas the statute authorizes the exclusion only of goods in which a foreign nation or national "has an interest."

As we have noted, section 500.204 does not in terms prohibit importation of goods originating in communist China but only requires that importation of such goods be licensed. However, it is clear from the regulations as a whole that a license will not be granted for the importation of mainland China goods which left that country after the effective date of the regulations. Therefore, unless the Chinese communist government "has an interest" in all such goods within the meaning of section 5(b)(3) of the Trading with the Enemy Act, the regulation is invalid as applied.

Section 5(b)(3) of the Act specifically authorizes the executive "to prescribe from time to time, definitions, not inconsistent with the purposes" of section 5 "for any or all of the terms used" in the section. Since the Secretary has defined "interest" to mean "an interest of any nature whatsoever, direct or indirect," 31 C.F.R. § 500.312, the term is to be read "in the broadest sense" (United States v. Quong, 303 F.2d 499, 503 (6th Cir. 1962)); and, of course, it is to be given a meaning consistent with the statutory purpose.

The purpose of the statute and the implementing regulations is to deny communist China an outlet for its goods in the United States market. Greenblatt v. Dillon, 238 F.Supp. 267, 269 (E.D.Mo. 1964); United States v. Broverman, 180 F.Supp. 631, 636 (S.D.N.Y. 1959); Sommerfield, 19 Bus. Lawyer 861, 862–63 (1964); Surrey & Shaw, International Business Transactions 87–88 (1963). This purpose is frustrated whenever goods produced in communist China reach the United States market, whether directly or through other markets, and without regard to who may hold title to the goods, or (within broad limits which are not exceeded here) how much time may have elapsed, between exportation from communist China and ultimate importation into the United States.[3]

---

**2.** "Our initial approach was to require evidence of non-Chinese origin in the form of statements from vendors, warehousemen, etc. We soon found, however, that substantial quantities of mainland Chinese commodities were entering the United States accompanied by all sorts of documents purporting to show that the goods were of Hong Kong or other non-Chinese origin. Or, they purported to show that the goods, although produced in mainland China, had been outside the mainland prior to December 17, 1950 and were thus not affected by the Regulations. There is nothing easier in the Far East than to obtain false documents." Stanley L. Sommerfield, Chief Counsel, Foreign Assets Control, United States Treasury Department. From a paper delivered at the Ninth Circuit Corporate Lawyers Institute of the University of Wisconsin, July 18, 1963. Reprinted at 19 Bus. Lawyer 861, 863 (1964). See also Surrey & Shaw, International Business Transactions 88 (1963).

**3.** As Judge Weinfeld said in United States v. Broverman, supra, 180 F.Supp. at 636: Communist China has an interest in the ultimate exportation to this country,

■ Communist China "has an interest," within the meaning of section 5(b), in any goods produced in its territory which entered the channels of foreign trade after the effective date of the regulations.[4] We therefore conclude that section 500.204, as applied, is based upon a proper reading of the statute.[5]

## IV

■ Appellant contends that the indictment does not sufficiently describe the unlawfully imported property. The test to be applied is clear enough: (1) do the averments state the elements of the offense and apprise appellant of what he must be prepared to meet; and (2) does the record clearly show the extent to which appellant may plead former acquittal or conviction? Russell v. United States, 369 U.S. 749, 763–764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); Turf Center, Inc. v. United States, 325 F.2d 793, 796 (9th Cir. 1963); Williamson v. United States, 310 F.2d 192, 195–196 (9th Cir. 1962).

■ Appellant does not contend that the language of the indictment omits any essential element of the offense. Nor do we understand him to argue that the language is so imprecise that he was unable to prepare his defense;[6] if "art objects" is itself an indefinite phrase its generality is limited by the allegations as to the number, value, and origin of the objects, and the date and place of their importation——details, incidentally, which the record indicates were drawn from an

inventory prepared with the assistance of appellant himself. Appellant made no claim of uncertainty before trial, nor of surprise as the trial progressed. Cf. Dunbar v. United States, 156 U.S. 185, 191–192, 15 S.Ct. 325, 39 L.Ed. 390 (1895). Compare Hagner v. United States, 285 U.S. 427, 433, 52 S.Ct. 417, 76 L.Ed. 861 (1932).

Rather, it is appellant's argument that he is not adequately protected against another trial for the same offense. This contention is to be tested by an examination of the whole record, and not the indictment alone. Russell v. United States, supra, 369 U.S. at 764, 82 S.Ct. 1038; Bartell v. United States, 227 U.S. 427, 433, 33 S.Ct. 383, 57 L.Ed. 583 (1913); Dunbar v. United States, supra, 156 U.S. at 191, 15 S.Ct. 325; Flores v. United States, 338 F.2d 966 (10th Cir. 1964). The record contains a photograph and an oral and written description of each of the objects which appellant was tried for importing. If appellant is charged again with importation of any of these objects, he will have at hand clear and positive proof of this prior conviction.

Appellant points to the fact that the number of art objects introduced and described at his trial was greater than the number alleged in the indictment, and that appellant testified that some of the objects were brought in before and some after the date alleged. Since the record is clear that appellant in fact stood trial for the unlicensed importation of each

whether effected directly or indirectly, of any of its native products which would help to sustain its internal economy and provide it with foreign exchange. This interest is not limited to a pecuniary benefit involved in a particular transaction. It is far more comprehensive and transcends particular shipments. * * * This interest extends to all Chinese products which have a market in the United States.

4. We need not decide whether communist China "has an interest" in goods which left the mainland in the years prior to the effective date of the regulations. As indicated earlier, the Secretary has

not attempted to prohibit the importation of such goods. He has only required that their importation be licensed, as a reasonable means of securing satisfactory proof that they in fact left China before the regulations became effective.

5. United States v. Mersky, 361 U.S. 431, 80 S.Ct. 459, 4 L.Ed.2d 423 (1960), relied upon by appellant, turns upon the interpretation to be given an ambiguous regulation, not upon whether the regulation exceeded the scope of the statute.

6. Beitel v. United States, 306 F.2d 665 (5th Cir. 1962), relied upon by appellant, is distinguishable on this ground. 306 F. 2d at 672.

and all of the objects which were introduced and described at trial, these differences between pleading and proof will not impair the adequacy of the record as a measure of prior jeopardy.[7]

Affirmed.

---

7. We do not understand appellant to argue that the variance between indictment and proof resulted in surprise or otherwise prejudiced appellant at trial. Nonetheless, it may be well to add that there is nothing in the record to suggest that it did.